UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JANE DOE,

Plaintiff,

v.

MARCUS JOHNSON, et al.,

Defendants.

No. 2:24-cv-1542 DJC AC P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding through counsel, who seeks relief under 42 U.S.C. § 1983 and state law for alleged sexual abuse at the California Institutional for Women. Defendants have brought a motion to dismiss certain claims of the Third Amended Complaint. ECF No. 57. Plaintiff opposes the motion, ECF No. 59, and defendants have filed a reply, ECF No. 60. For the reasons that follow, the undersigned recommends that the motion be granted.

I. Background and Procedural History

The original complaint (ECF No. 1) was filed on May 31, 2024, and a First Amended Complaint (ECF No. 11) was filed on July 19, 2024. On October 7, 2024, the complaint was screened and found to state claims for relief against certain defendants. Not all claims against all defendants were found to be adequate to proceed, however. ECF No. 24. Plaintiff was given the opportunity to amend, and a Second Amended Complaint was filed on November 21, 2024. ECF No. 27. This complaint was screened (ECF No. 28) and served. The undersigned subsequently

granted a stipulated request to file a Third Amended Complaint, and that pleading was filed on October 17, 2025. ECF Nos. 50, 52.

The court screened the Third Amended Complaint and found that it stated cognizable claims against defendants Macomber, Johnson, Montes, Gonzalez, and Doe Defendants 1-20. ECF No. 53. With the exception of the Doe Defendants, who are unidentified ISU officers, all defendants have been served. Defendant Johnson is in default. ECF No. 35.[1] The instant motion to dismiss is brought by defendants Macomber, Montes and Gonzalez. ECF No. 57.

II. Allegations of the Third Amended Complaint

Plaintiff alleges that the California Institution for Women (CIW), where she has been incarcerated since 2015, has a long and well-documented history of correctional staff, including correctional cooks, sexually abusing the prisoners with few repercussions. ECF No. 52 at 2, 4-6.[2] Against that backdrop, plaintiff asserts eleven causes of action against defendants Johnson, Montes, Gonzalez, Macomber, and Does 1-20, based on two separate instances of sexual assault by Johnson in 2020. Id. at 6-30. Johnson, Montes, and Gonzalez[3] are sued in their individual capacities while Macomber is sued in his official capacity. Id. at 2-3. The Doe defendants are identified as Investigative Services Unit (ISU) staff responsible for conducting staff investigations. Id. at 5, 11, 23-24.

In spring of 2020, plaintiff worked in the kitchen where Johnson was her supervisor. Id. at 6. Johnson caught plaintiff taking fresh vegetables from the kitchen and told her he would write her up. Id. at 7. After plaintiff expressed her concerns about getting written up and asked if she could take do extra duty instead of being written up, Johnson took her to into the bathroom where he forced her to perform oral sex on him before slamming her against the wall and raping her. Id. While raping her, Johnson threatened plaintiff by telling her that if she reported him no

---

[1] Johnson is the alleged direct perpetrator of sexual assault. Plaintiff brings claims against him for sexual assault and battery, gender violence, false imprisonment, and claims under California's Bane Act and Ralph Act.

[2] Citations to page numbers of electronically filed documents refer to the pagination imposed by the CM/ECF system rather than to a document's internal pagination.

[3] Because plaintiff agrees that defendant Gonzalez should be dismissed, ECF No. 59 at 4, the specific allegations against him are omitted here.

one would believe her and he would say she sexually assaulted him, subjecting her to criminal charges. Id. During a second incident in June 2020, Johnson demanded that plaintiff perform oral sex on him, which she did out of fear of what he would do if she did not comply. Id. at 7-8. As a result of Johnson's abuse, plaintiff suffered from anxiety and panic attacks and required emergency mental health treatment due to extreme anxiety and suicidal ideation. Id. at 8. When plaintiff requested mental health and other support services under the Prison Rape Elimination Act (PREA), Gonzalez, Montes, and the Doe defendants failed to provide them in a timely and appropriate manner. Id. at 9-10. They further prevented her from seeking counseling from the local rape crisis center because such calls were required to be done from the ISU office, which was a threatening and intimidating environment for survivors who reported staff sexual abuse. Id.

Sexual abuse by supervising cooks has been a known problem at CIW since 2017, and Gonzalez, Montes, and Doe defendants have failed to take appropriate action against accused staff, perpetuating the culture of abuse. Id. at 8-9. Johnson specifically was well known at CIW for sexually abusing prisoners, and at least four other complaints were made against Johnson in 2020 for sexual abuse. Id. at 9, 11. Prior to his assault of plaintiff, Johnson received a promotion after being accused of sexually abusing at least one other prisoner. Id. at 12. Plaintiff further alleges that Gonzalez and Montes knew or should have known she was at risk of being sexually abused by Johnson, and that they violated policy by referring the investigation into Johnson's conduct to CIW's ISU instead of to the Office of Internal Affairs (OIA). Id. at 10. ISU staff were not properly trained to investigate allegations of staff sexual abuse, and were inherently conflicted due to personal relationships many had with the accused staff members. Id. at 10-11. During the investigation, Doe ISU staff harassed and threatened Johnson's victims, including plaintiff. The investigation was not referred to OIA until several years after the allegations against Johnson were made. Id. Although plaintiff was supposed to be informed as to whether investigators believed she had been abused and whether any action had been taken against Johnson, she was not notified that her allegations against Johnson had been sustained until four years after the abuse. Id. at 12. During that time plaintiff experienced severe anxiety, fear of retaliation, and other severe emotional distress. Id.

As Warden of CIW, Montes was required to be immediately notified about any allegations of sexual misconduct and served on the Institutional PREA Review Committee, where he was required to conduct an incident review, and he was responsible for overseeing matters handled by the ISU. Id. at 12-13. Montes's indifference to his responsibilities and failure to ensure compliance with CDCR regulations and policies regarding the investigation into alleged sexual misconduct encouraged the rampant and ongoing sexual abuse of prisoners by CIW staff. Id. at 13-14. He personally knew or should have known that Johnson was being considered for promotion despite allegations against him for sexual abuse, and the authorization of the promotion condoned and encouraged Johnson's continued abuse of prisoners. Id. at 14. Montes also failed to implement adequate hiring policies to prevent the hiring of sexual predators and adequate training to prevent, detect, and respond to sexual abuse by staff. Id.

Plaintiff remains incarcerated at CIW and has named Macomber, Secretary of the CDCR, in his official capacity solely for the purpose of obtaining injunctive relief at CIW and within the CDCR. Id. at 16-19.

III. The Motion to Dismiss

Defendants move to dismiss claims brought against Macomber, Montes and Gonzalez. ECF No. 57. They contend as to Macomber, the Secretary of CDCR, that (1) the court lacks subject matter jurisdiction over plaintiff's claims for injunctive relief, and (2) plaintiff has failed to allege facts sufficient to support such relief. As to Montes, the CIW Warden, defendants argue that (1) plaintiff's state law claims are barred by her failure to comply with the claim presentation requirement of the state's Government Claims Act, and (2) that the claims for vicarious liability and intentional infliction of emotional distress fail to allege facts sufficient to state a claim. ECF No. 57-1. Because plaintiff concedes that Gonzalez should be dismissed (ECF No. 59 at 4), the arguments raised by the motion as to this defendant need not be addressed.

IV. Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

## V. Discussion

### A. Defendant Macomber and Plaintiff's Standing to Seek Injunctive Relief

Defendants contend first that this court lacks jurisdiction to entertain the sole claim against Secretary Macomber, which is for injunctive relief. The jurisdictional argument is based on plaintiff's asserted lack of standing to pursue such relief. ECF No. 57-1 at 11.

A plaintiff seeking injunctive relief must have Article III standing to seek an injunction by

showing "a real and immediate threat that the plaintiff will be wronged again" in a similar way. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1495 (9th Cir. 1996) ("The requirements for the issuance of a permanent injunction are 'the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law.'") (internal citations omitted). In Lyons, the U.S. Supreme Court held that a plaintiff who had been subjected to and injured by a dangerous police chokehold lacked standing to seek an injunction prohibiting the technique, despite detailed factual allegations regarding the frequency with which LAPD officers used the chokehold, a departmental policy authorizing its use in non-life-threatening situations, significant harm to those subjected to the technique, and a likelihood of future encounters with police which the Ninth Circuit had found as a matter of common sense to be non-speculative. Lyons, 461 U.S. at 97-98, 111; cf. Lyons v. Los Angeles, 615 F.2d 1243, 1244, 1246-1247 (9th Circ. 1980) (overruled). The Supreme Court held that Lyon's past injury, even in the context of allegedly widespread and ongoing injuries to others, did not satisfy his burden of demonstrating a "real or immediate threat that the plaintiff will be wronged again." Lyons, 461 U.S. at 111.

To the extent that plaintiff here relies on the existence of an ongoing investigation by the U.S. Department of Justice into sexual abuse at California's prisons for women, ECF No. 59 at 7-8, this does not meet her burden under Lyons. The quoted DOJ press release documents a finding that there is "significant justification" to "evaluate *whether* CDCR protects people incarcerated at Central California Women's Facility and the California Institution for Women from sexual abuse by correctional staff." Id. (quoting press release dated September 4, 2024) (emphasis added). The existence of the investigation demonstrates that there exists a factual basis for questioning whether inmates are adequately protected; it thus supports a conclusion that allegations of widespread abuse, failure to protect inmates, and/or an unacceptable risk of future harm cannot be simply dismissed as unfounded. Plaintiff is therefore correct that DOJ's decision to investigate undercuts any claim that plaintiff's fear of further abuse is entirely speculative. Id. at 8. However, a reasonable fear of further abuse is not the same thing as a likelihood of experiencing further abuse. That is what the law requires.

Plaintiff's detailed and fact-specific allegations of sexual abuse at her institution, ECF No. 52 at 4-6, all involve incidents that predate her own abuse by Johnson. Her allegations regarding ongoing sexual harassment and abuse, in contrast, are conclusory. See id. at 19. Plaintiff alleges that she remains incarcerated at CIW and that defendants "have maintained, and continue to maintain, a custom or policy of failing to enforce and comply with the PREA at CIW, thereby causing ongoing risk to JANE DOE #1 of further sexual abuse by CIW staff." Id., ¶ 106. She references ongoing inmate reports of sexual abuse by staff, id. at ¶ 107, but the TAC provides no specifics regarding any such incidents, the frequency of such reports, or the prevalence of alleged abusers among prison staff. Plaintiff alleges that "from 2020 to the present, CIW staff have systematically failed to protect CIW prisoners from sexually abusive staff in a variety of positions including peace officers, medical staff, and work supervisors in various jobs including culinary and janitorial positions." Id. Again, no specific supporting facts are alleged. These allegations certainly raise serious concerns about inmate safety, but they fail to provide a factual basis for a conclusion that plaintiff personally faces a likelihood of imminent further sexual abuse.[4]

In her opposition to the motion to dismiss, plaintiff provides additional information, absent from the TAC, regarding her ongoing experience as a culinary worker:

---

[4] Plaintiffs can sometimes demonstrate that an injury is likely to recur, and thus establish standing to seek injunctive relief, by demonstrating that the harm at issue is part of a pattern of officially sanctioned behavior which violates their federal rights. Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001). This approach applies largely in the class action context, where named plaintiffs demonstrate that they are likely to experience future harm because they are part of a class that is being collectively subjected to the officially sanctioned and ongoing deprivation of rights. See, e.g., LaDuke v. Nelson, 762 F.2d 1318,1 323 (9th Cir. 1985) (plaintiff migrant farmworkers had standing to seek injunction against workplace raids targeting such laborers); Armstrong, 275 F.3d at 861 (disabled inmates had standing to seek injunction regarding accommodations which were being systematically denied), cert. denied, 537 U.S. 812 (2002); Melendres v. Arpaio, 695 F.3d 990, 988 (9th Cir. 2012) (Latino immigrants had standing to seek injunction prohibiting race-based traffic stops which were part of an ongoing County effort to assist ICE). This method of demonstrating standing is not necessarily limited to putative class representatives. Plaintiff, however, does not contend that the alleged pattern of sexual abuse in the prison is itself officially sanctioned. Nor, as noted above, does she make sufficient allegations regarding the ongoing prevalence of sexual assault to support an inference that she is likely to experience it again. Accordingly, this line of cases—which the court has considered *sua sponte*—does not help her.

> As a female prisoner who continues to work full-time in the kitchen, Jane Doe # 1 is especially at risk of further sexual abuse by predatory cooks who continue to work in the kitchen. With nearly seven years of experience working in CIW's kitchen, Jane Doe #1 has firsthand experience with each and all of the predatory cooks who was known for being sexually abusive towards his workers. Plaintiff has repeatedly seen predatory cooks come and go from the kitchen, both before and after Johnson's departure, without any consequences after their sexual abuse of workers is exposed.

ECF. No. 59 at 8.

Even if these allegations were included in the TAC, they would not satisfy the Lyons requirements for standing. Plaintiff does not state that she has personally been subjected to sexual harassment or threatened with further sexual abuse since 2020, nor does she identify any specific and current conditions which demonstrate a real and immediate threat that she will be assaulted again in the CIW kitchen or elsewhere. That she feels unsafe is entirely understandable. Based on the allegations of the TAC, the court does not disagree with plaintiff's statement that she is presently unprotected from further sexual abuse. See id. But plaintiff's theory of standing—that "she faces an ongoing risk of further sexual abuse by her supervisors, simply by the fact that she continues to work in an environment where little has changed since Johnson left in 2020," id.—is squarely foreclosed by Lyons. If the plaintiff in Lyons did not have standing to seek an injunction against use of the chokehold to which he had been subjected in the past and which continued to be widely used in his community, plaintiff here does not have standing to seek the injunctive relief specified in the TAC.[5]

Because plaintiff has not demonstrated standing under Lyons, the court need not otherwise address the sufficiency of the TAC to support injunctive relief. The motion to dismiss must be granted as to defendant Macomber.

B. Defendant Montes and Plaintiff's Failure to File a Government Claim

Defendants move to dismiss all state law claims for failure to comply with the claim presentation requirement of California's Government Claims Act. ECF No. 57-1 at 15. This argument encompasses all claims against defendant Montes except plaintiff's Third Cause of Action under 42 U.S.C. § 1983.

[5] See ECF No. 52 at 31.

"Before a person can sue a [California] public entity or public employee for money damages for actions taken within the scope of the person's employment, he or she must first file a government claim pursuant to the CGCA, codified at California Government Code section 810 et seq." Robinson v. Alameda County, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (citations omitted). The claim presentation requirement of the California statute applies to state law claims brought in federal court. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). "[T]he filing of a [state tort] claim for damages is more than a procedural requirement, it is a condition precedent to plaintiff's maintaining an action against defendant, in short, an integral part of plaintiff's cause of action." Williams v. Horvath, 16 Cal.3d 834, 842 (1976) (citations and internal quotation marks omitted). Accordingly, a complaint must "allege facts demonstrating or excusing compliance with the claim presentation requirement" or the state law claims are subject to dismissal. State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1239 (2004).

Plaintiff acknowledges her failure to file a claim, but she contends that defendants should be estopped from relying on her non-compliance with the statute. ECF No. 59 at 9. Under California law, defendants may be estopped from asserting the CGCA where they have affirmatively prevented or deterred the filing of a claim, whether through misleading statements or by acts of violence or intimidation. John R. v. Oakland Unified School Dist., 48 Cal.3d 438, 445 (1989) (collecting cases). Estoppel applies where the government has acted in an unconscionable manner or attempted to take unfair advantage of the claimant. Christopher P. v. Mojave Unified Sch. Dist., 19 Cal. App. 4th 165, 172 (1974).

In support of her estoppel theory, plaintiff directs the court to ¶ 119 of the TAC. ECF No. 59 at 9. There she alleges that she is excused from the notice of claim requirement due to "threats by Defendant JOHNSON and the longstanding culture of retaliation by CIW against prisoners who report staff for sexual abuse, all of which prevented her from timely filing a notice of government claim." ECF No. 52 at 20. There are no allegations here or elsewhere in the TAC that defendant Montes took any affirmative action during the relevant period to prevent or

dissuade plaintiff from filing a claim.[6] Even assuming that threats by one individual defendant can have equitable estoppel effect against another, plaintiff has not provided facts showing that Johnson's threats could have prevented her submission of a claim after he was barred from CIW in June 2020. The tolling effect of threats lasts only as long as the threat continues. See John R., 48 Cal.3d at 445-446. Plaintiff's generalized and conclusory allegations of a retaliatory culture at CIW are inadequate to establish that she was affirmatively deterred or that the government behaved unconscionably in relation to her ability to file a claim.

Plaintiff cites Ramirez v. County of Los Angeles, 397 F.Supp.2d 1208, 1229 (C.D. Cal. 2005), which presented facts quite different from those here. In Ramriez, the district court estopped a defendant from asserting a violation of the CGCA's timeliness provisions on grounds that the defendant had directly threatened the plaintiff and thus interfered with his ability to file a timely claim. Id. at 1228. Moreover, the estoppel issue in Ramirez was decided on summary judgment. Id. Here, where the issue has been raised at the pleading stage, plaintiff requests the opportunity to conduct early discovery on the question "whether she had access to the government claim form in 2020 to determine whether the claim process was an available remedy." ECF No. 59 at 10. This request will not be granted.

Plaintiff identifies no California authority for the proposition that access to a government claim form is relevant to estoppel, or that the lack of such access excuses non-compliance with the CGCA on some other basis. The undersigned is unaware of any such authority. Plaintiff attempts to analogize the CGCA's claim presentation requirement to the federal PLRA's administrative exhaustion requirement, which does contain an exception for remedies which are effectively unavailable. Id.; see Ross v. Blake, 578 U.S. 632, 642 (2016) (under PLRA, inmates need exhaust only those remedies which are "available"). The analogy does not hold. As respondent quite correctly notes, the exhaustion requirement of the PLRA is an affirmative defense and claim presentation under the CGCA is a jurisdictional element of the claim. See

---

[6] In contrast, the TAC specifically alleges that in relation to the April 2020 rape, Johnson "threatened that if [plaintiff] reported him, no one would believe her, he would claim that she was the one who sexually assaulted him, and she would be subject to criminal charges." Id. at 7, ¶ 35.

Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (PLRA exhaustion); Bodde, 32 Cal. 4th at 1239-40 (CGCA). The PLRA is entirely irrelevant to the question presented here, which is exclusively a matter of California law.

Plaintiff's argument that defendant would not be prejudiced by allowing the claims to go forward, ECF No. 59 at 10, is equally unavailing. This court is without discretion to waive a jurisdictional element of a claim. Moreover, plaintiff points to no authority that a defendant's constructive knowledge of a claim satisfies or excuses compliance with the claim presentation requirement.

For all these reasons, the undersigned concludes that the state law claims against defendant Montes must be dismissed for failure to plead facts demonstrating or excusing compliance with the claim presentation requirement. Accordingly, the court need not address defendants' other challenges to these claims.

C. Leave to Amend

Under the Federal Rules, leave to amend should be liberally granted "when justice so requires." Rule 15(a)(2), Fed. R. Civ. P. Reasons to deny amendment include futility and undue delay. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607 (9th Cir. 1992); Entangled Media, LLC v. Dropbox, Inc., 348 F.R.D. 649, 655 (N.D. Cal. 2025). The court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended their complaint. Ecological Rights Foundation. v. Pacific Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013). The TAC is plaintiff's fourth iteration of her complaint. The case is more than two years old and has not progressed past the pleading stage. It is apparent from the above discussion that neither plaintiff's standing to pursue injunctive relief nor her failure to have satisfied the claim presentation requirement of the CGCA, both of which are jurisdictional defects, could be cured by further amendment. Plaintiff has proffered no additional facts that could alter the analysis of those issues, nor does she affirmatively argue for leave to amend in the event the motion to dismiss is granted. Accordingly, further leave to amend is not appropriate.

CONCLUSION

For the reasons set forth above, it is HEREBY RECOMMENDED that defendants'

motion to dismiss (ECF No. 57) be GRANTED as follows:

1. Defendants Macomber and Gonzalez should be DISMISSED from this action;
2. Plaintiff's First Cause of Action (against Macomber for injunctive relief) should be dismissed;
3. All state law claims against defendant Montes should be DISMISSED; and
4. The case should proceed against defendant Johnson (Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Eleventh Causes of Action), Doe Defendants 1-20 (Third, Fifth, Sixth, Ninth and Eleventh Causes of Action), and against defendant Montes on the Third Cause of Action only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within **five** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). **Due to exigencies of the court's calendar, extensions of time for objections will be disfavored**. The parties are reminded that objections need only identify the portion of the Findings and Recommendations to which objection is made; extensive briefing is unnecessary.

DATED: August 13, 2026

Allison Claire

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE